**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| BARBARA LILLY | CIVIL ACTION |
| VERSUS | 17-459-SDD-RLB |
| DOLLAR GENERAL CORPORATION,<br>D/B/A DOLGENCORP, LLC | |

# RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] filed by Defendant DG Louisiana, LLC ("Dollar General" or "Defendant"). Plaintiff, Barbara Lilly ("Plaintiff") has filed an *Opposition*[2] to this motion, to which Defendant filed a *Reply*.[3] For the reasons which follow, Defendant's motion shall be DENIED.

## I. BACKGROUND

On Saturday, July 4, 2015, on the way to her granddaughter's birthday party, Plaintiff entered a Dollar General store in Sorrento, Louisiana to purchase a few items for her granddaughter.[4] Plaintiff went into the store while her husband waited in his vehicle parked in the parking lot.[5] Plaintiff testified that she did not use a shopping cart but gathered in one hand an assortment of items including a gift bag, tissue paper, a card, a

[1] Rec. Doc. No. 11.
[2] Rec. Doc. No. 16.
[3] Rec. Doc. No. 22.
[4] Rec. Doc. No. 16-1 at 15 (Deposition of Barbara Lilly).
[5] *Id.* at 26.

toy ball, and a rag doll.[6]  As Plaintiff headed to the checkout counter to purchase the items, she fell to the floor.[7]  Plaintiff testified that she was walking straight ahead and looking towards the register at the time of the fall.[8]  Plaintiff testified that there were no other customers in line at the register, and she saw only the cashier;[9] further, she did not see anything on the ground as she approached.[10]  After Plaintiff was getting up, she observed what appeared to be dog food pellets all over the floor.[11] Plaintiff contends the cashier, Layne Achord ("Achord"), helped Plaintiff pick up her merchandise.[12] While assisting Plaintiff, Achord observed the dog food pellets on the floor, and he began picking up some of the dog food.[13]  Plaintiff testified that she observed more dog food pellets on the floor at a distance, and Achord began picking up these pellets as well.[14]  Plaintiff testified that she observed a bag of dog food by the "end cap" of the aisle but did not see evidence of an open or ripped bag of dog food on the floor.[15]   Although Plaintiff was in pain, she purchased the items and left the store in order to arrive promptly at her granddaughter's party.[16]

As Plaintiff's pain only increased throughout the day, her husband brought her to an urgent care clinic after the birthday party where Plaintiff had x-rays taken and received medication for her pain and swelling.[17]  At the clinic, Plaintiff was advised to fill out an

---

[6] *Id.* at 16-17.
[7] *Id.* at 16.
[8] *Id.* at 27.
[9] *Id.* at 18.
[10] *Id.* at 22.
[11] *Id.*
[12] *Id.* at 18-19.
[13] Rec. Doc. No. 16-2 at 66 (Deposition of Layne Michael Achord).
[14] Rec. Doc. No. 16-1 at 22 (Deposition of Barbara Lilly).
[15] *Id.* at 23.
[16] *Id.* at 19.
[17] *Id.* at 30.

49324

accident report and follow-up with her doctor regarding her injuries.[18] Upon leaving the clinic, Plaintiff and her husband returned to the Dollar General, her husband went inside and requested an accident report, and Plaintiff took the report home, filled it out, and returned it as directed.[19]

Achord testified that, as Plaintiff was approaching the register, he was checking out a male customer who purchased a bag of dog food.[20] Achord testified that, when the male customer brought the dog food to the counter, he noticed a hole in the bag of the dog food which was causing dog food pellets to spill out onto the counter.[21] Achord testified that he placed tape over the hole to prevent further spillage but stated that, at that time, he did not know that the customer had been spilling dog pellets onto the floor as he was walking to the register. Achord further testified that, after Plaintiff left, he "walked the store," which had "trails of dog food."[22]

Danielle Jackson ("Jackson") was also working as "keyholder" at the Dollar General on the date and at the time of Plaintiff's accident.[23] Jackson testified that, while she was employed at Dollar General, the store was understaffed, had no store manager, usually two people working at a time, and the store was "always in disarray."[24] Jackson also testified that she worked with Achord "a lot,"[25] "[s]tuff was everywhere, and it was

---

[18] *Id.* at 20.
[19] *Id.* at 20-21.
[20] Rec. Doc. No. 16-2 at 38 (Deposition of Layne Michael Achord).
[21] *Id.* at 38; 43.
[22] *Id.* at 43, lines 16-17.
[23] Rec. Doc. No. 16-3 at 13 (Deposition of Danielle Tomeia Jackson). Jackson testified that a keyholder opens the store in the morning, closes the store at night, sometimes makes bank deposits, and has some managerial duties. *Id.* at 12.
[24] *Id.* at 15-16, line 6.
[25] *Id.* at 16, line 20.

49324

kind of hard to keep up with only two people working on the shift."[26] Jackson further testified that there was no particular person or company responsible for regularly cleaning the store, and it was the employees' responsibility to "try to keep up with the upkeep of the store."[27]

Although Jackson could not remember the incident perfectly, she testified that she witnessed Plaintiff's fall.[28] Jackson testified that, to her recollection, Plaintiff slipped and fell going towards the front door.[29] Jackson also testified that she remembered the dog food being on the floor.[30] Jackson further testified that she remembered seeing a yellow bag of (perhaps) Pedigree dog food at the end cap of an aisle with a tear in the bottom of the bag.[31] Jackson testified that she never saw any dog food pellets on the floor until after Plaintiff had fallen.[32]

Plaintiff filed suit against Defendant pursuant to the Louisiana Liability Merchant Statute[33] to recover damages sustained as a result of this incident. Plaintiff claims she sustained physical and mental injuries as a result of this fall that will continue to require medical care.[34] Defendant has moved for summary judgment, arguing that Plaintiff cannot carry her burden under this statute because the complained-of condition was open and obvious, and Plaintiff has failed to demonstrate Defendant's actual or constructive notice of the allegedly hazardous condition.

---

[26] *Id.* at 16, lines 15-17.
[27] *Id.* at 18, lines 17-18.
[28] *Id.* at 36.
[29] *Id.* at 39.
[30] *Id.* at 40.
[31] *Id.* at 42-43.
[32] *Id.* at 54.
[33] La. R.S. 9:2800.6.
[34] Rec. Doc. No. 1-1, ¶ 5.
49324

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[35] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[36] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[37] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[38] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[39]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[40] All reasonable factual inferences are drawn in favor of the nonmoving party.[41] However, "[t]he Court has no

---

[35] Fed. R. Civ. P. 56(a).
[36] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[37] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[38] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[39] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[40] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[41] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
49324

duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[42] "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[43]

### B. The Louisiana Merchant Liability Statute - La. R.S. 9:2800.6

This matter is governed by the Louisiana Merchant Liability Statute,[44] which provides:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
>
> In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
>
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise

---

[42] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[43] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[44] The matter is before the Court based on diversity of citizenship; thus, the Court must apply the substantive law of Louisiana to the facts of this case. In applying and interpreting Louisiana law, this Court looks to final decisions of the Louisiana Supreme Court for guidance under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).
49324

reasonable care.

1. <u>Reasonably Foreseeable Unreasonable Risk of Harm</u>

In order to prove the Defendant's liability under Section A, Plaintiff must demonstrate that the Defendant failed to meet its duty to use "reasonable care to keep [its] aisles, passageways, and floors in a reasonably safe condition."[45] The duty imposed on a merchant under the statute "includes a reasonable effort to keep the premises free of any hazardous conditions which might reasonably give rise to damage."[46] However, a merchant "is not the insurer of the safety of his patrons ... [and] is not liable every time an accident happens."[47] In evaluating whether the effort taken to protect customers was reasonable, a court must look to the specific circumstances of each case and "the degree of vigilance must be commensurate with the risk involved, as determined by the overall volume of business, the time of day, the section of the store and other relevant considerations."[48]

Under Louisiana law, to determine whether a condition is unreasonably dangerous, courts are required to consider the following factors in the risk-utility test: (1) the utility of the complained of condition, (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition, (3) the cost to prevent the harm, and (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature.[49] The second prong of this test focuses on whether the allegedly

---

[45] La. R.S. 9:2800.6(a).
[46] *Burnett v. M & E Food Mart, Inc.*, 2000–350 (La.App. 3 Cir. 11/15/00), 772 So.2d 393, 396 (quoting La.R.S. 9:2800.6(A)).
[47] *Hardman v. Kroger Co.*, 34,250 (La.App. 2 Cir. 12/6/00), 775 So .2d 1093, 1095 (citing *Ward v. ITT Specialty Risk Services, Inc.*, 31,990 (La.App. 2 Cir. 6/16/99), 739 So.2d 251; *Tanner v. Brookshire Grocery Co.,* 29,276 (La.App. 2 Cir. 4/2/97), 691 So.2d 871).
[48] *Id.* at 1095.
[49] *Bertaut v. Corral Gulfsouth, Inc.*, 209 So.3d 352, 356 (La. App. 5th Cir. 2016)(citing *Bufkin v. Felipe's La.,* 49324

dangerous or defective condition was obvious and apparent. Generally, a defendant generally does not have a duty to protect against that which is obvious and apparent. Thus, for an alleged hazard to be considered obvious and apparent, the hazard should be one that is open and obvious to everyone who may potentially encounter it.[50] If the facts of a particular case show that the complained of condition should be obvious to all, the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff.[51]

Defendant maintains that the hazardous condition that caused Plaintiff's fall – the dog food pellets on the floor – was obvious and easily avoidable; thus, the risk of harm was not unreasonable. Defendant cites evidence that the dog food pellets were brown, round, and about one inch in size,[52] and they were scattered across a tiled floor that is a light gray color.[53] Thus, Defendant contends the dog food pellets were plainly visible to a customer approaching the counter, and any risk of harm presented could have been easily avoided by Plaintiff's own prudence to observe her path as she walked.

Plaintiff argues that summary judgment is inappropriate in this case and points to several alleged disputed issues of material fact regarding the open and obvious nature of the risk of harm. Plaintiff contends the small brown pellets on a gray tiled floor are not akin to the types of open and obvious hazards – a large dumpster or a shopping cart - in cases cited by the Defendant in which summary judgments were upheld.[54] Further, and

---

*LLC*, 171 So.3d 851, 856 (La. 2014)).
[50] *Bertaut*, 209 So.3d at 356-57, citing *Bufkin,* 171 So.3d at 856; *Broussard v. State ex rel. Office of State Buildings,* 113 So.3d 175, 184 (La. 2013); *Hutchinson v. Knights of Columbus, Council No. 5747*, 866 So.2d 228, 234 (La. 2004).
[51] *Bertaut*, 209 So.3d at 357, citing *Upton,* 186 So.3d at 1200.
[52] Rec. Doc. No. 16-1 at 23; 27.
[53] *Id.* at 25.
[54] Defendant cites *Bufkin v. Felipe's Louisiana, LLC*, 14-0288 (La. 10/15/14), 171 So.3d 851 where the

49324

importantly, Plaintiff maintains that this is case is also distinguishable from the cases on which Defendant relies because, in those cases, the plaintiffs admittedly saw the obstacles, and here, Plaintiff testified that she did not see the dog food pellets on her way to the counter.

Plaintiff cites the decision of the district court for the Eastern District of Louisiana in *Morris v. Home Depot, U.S.A., Inc.*,[55] wherein the court disagreed with a defendant's argument that the plaintiff was inattentive for failing to see a box on the floor of the supermarket: "In a self-service store, a patron has a diminished duty to see that which should have been seen because his attention is presumed to be attracted to the advertised goods on the shelf."[56]

The Louisiana Supreme Court addressed this issue in *Broussard v. State, Office of State Buildings*.[57] In *Broussard*, a UPS delivery driver sustained injuries when he admittedly and voluntarily chose to attempt to traverse a building's visibly misaligned elevators, while maneuvering a loaded dolly (weighing approximately three hundred pounds), by attempting to push the dolly over a one and one-half to three-inch elevation caused by the elevator's misalignment. After his attempt was unsuccessful, he turned around, stepped backwards into the elevator, and attempted to pull the dolly over the elevation. "[T]he inertia created by the pull caused him to lose control of the load and forcefully pushed him into the back wall of the elevator," causing him to sustain a serious

---

open and obvious danger was a large dumpster located in the street) and *Rodriguez v. Dolgencorp, LLC*, 2014-1725 (La. 11/14/14), 152 So.3d 871 involving a plainly visible shopping cart in the store aisle.
[55] No. 12-1700, 2013 WL 4508175 (E.D. La. Aug. 22, 2013).
[56] *Id.* at *3 (quoting *Lofton v. Hayward*, 2000-2019, (La.App. 4 Cir. 1/9/02), 806 So.2d 877 at 882-83 (citations omitted))(internal quotation mark omitted).
[57] 2012–1238 (La.4/5/13), 113 So.3d 175.
49324

back injury.

Following a jury trial, the plaintiff was awarded approximately $1.5 million, subject to reduction by the 38% fault the jury assigned to the plaintiff.[58] The appellate court reversed, finding the jury's conclusion that the elevator offset created an unreasonable risk of harm to be erroneous on the basis that, because the defect was open and obvious, it did not present a serious risk of harm. In doing so, the appellate court noted that the plaintiff could have avoided his injuries by acting more reasonably under the circumstances.[59] The Louisiana Supreme Court reversed, holding:

> We have described the question of whether a defect presents an unreasonable risk of harm as "a disputed issue of mixed fact and law or policy that is peculiarly a question for the jury or trier of the facts." *Reed v. Wal–Mart Stores, Inc.*, 97–1174, p. 4 (La.3/4/98), 708 So.2d 362, 364 (quoting *Tillman v. Johnson*, 612 So.2d 70 (La.1993) (per curiam)). As a mixed question of law and fact, it is the fact-finder's role—either the jury or the court in a bench trial—to determine whether a defect is unreasonably dangerous. Thus, whether a defect presents an unreasonable risk of harm is "a matter wed to the facts" and must be determined in light of facts and circumstances of each particular case. *E.g., Dupree v. City of New Orleans*, 99–3651, pp. 13–14 (La.8/31/00), 765 So.2d 1002, 1012 (citation omitted); Reed, 97–1174 at p. 4, 708 So.2d at 364.[60]

The *Broussard* court further stated: "It is axiomatic that the issue of whether a duty is owed is a question of law, and the issue of whether a defendant has breached a duty owed is a question of fact.[61] The judge decides the former, and the fact-finder—judge or jury—decides the latter."[62] Ultimately, the Court concluded that, "while a defendant only has a duty to protect against unreasonable risks that are not obvious or apparent, the

---

[58] *Id.* at 180–181.
[59] *Id.*
[60] *Id.* at 183-184.
[61] *Id.* at 185, citing *Brewer v. J.B. Hunt Transp., Inc.*, 09–1408, p. 14 (La.3/16/10), 35 So.3d 230, 240 (citing *Mundy v. Dep't of Health and Human Res.*, 620 So.2d 811, 813 (La.1993)).
[62] *Id.*

49324

fact-finder, employing a risk-utility balancing test, determines which risks are unreasonable and whether those risks pose an open and obvious hazard. In other words, the fact-finder determines whether defendant has breached a duty to keep its property in a reasonably safe condition by failing to discover, obviate, or warn of a defect that presents an unreasonable risk of harm."[63]

Applying the foregoing law and jurisprudence to the facts of this case, the Court finds that genuine issues of material fact exist which preclude a summary judgment on the open and obvious nature of the risk of harm presented by the hazardous condition in this case. While the Court recognizes its role to determine, as a matter of law, if the Defendant owed a duty, that question depends on a determination of whether the hazard in this case was "open and obvious," clearly a question for the jury under the disputed facts of this case. The Court acknowledges that summary judgment is not always precluded when the open and obvious nature of a condition is at issue;[64] however, it is unacceptable when, as here, there are material issues of disputed fact regarding the open and obvious nature of the risk.

2. Actual or Constructive Notice

Defendant also contends it is entitled to summary judgment because Plaintiff has failed to carry her burden of establishing that Defendant had constructive or actual notice of the hazardous condition. Indeed, "[c]ourts will not infer constructive notice; the claimant must make a positive showing of the existence of the condition prior to the fall and that it existed for some period of time."[65] Defendant relies on the testimony of Achord in

---
[63] *Id.*
[64] *See James v. Hilton New Orleans Corp.*, 2015 WL 4606060 at *4 (E.D. La. July 30, 2015).
[65] *Courington v. Wal-Mart Louisiana LLC*, No. 2:17-00771, 2018 WL 707521 at *3 (W.D. La. Feb. 2, 49324

estimating that two to three minutes elapsed from the time he noticed the pellets on the check-out counter and the time Plaintiff fell.[66] Achord also testified that, because he was working as cashier, he did not have an opportunity to walk the store and check for spills prior to Plaintiff's fall.[67] On this basis, Defendant contends Plaintiff cannot establish actual or constructive notice on the part of Defendant within a sufficient time frame to have cleaned the spill.

Defendant's argument on this point is weak and ignores not only the conflicting testimony provided by Achord but also the testimony of Jackson, the other employee at the store on the date of Plaintiff's fall. Jackson's testimony not only conflicted with Achord's on several material issues, but Jackson's testimony also creates an issue of fact as to whether Defendant followed its own safety policies and procedures with respect to addressing hazardous conditions in the store. Jackson testified that employees received very little training on maintaining the cleanliness of the store, and she denied ever seeing a document entitled "(SOP 42) Floor Maintenance" or a document entitled "Safety, (SOP 118) Spill Response."[68] Achord likewise testified that he did not remember having any training regarding safety or cleanup procedures while employed by Defendant,[69] and he did not remember seeing the safety documents entitled "(SOP 42) Floor Maintenance" or "Safety, (SOP 118) Spill Response."[70] Achord testified that a Dollar General manager identified as "Fayette" had instructed him to check the floor for trash or spills, to use a

---

2018)(citations omitted).
[66] Rec. Doc. No. 16-2 at 49; 68.
[67] *Id.* at 60-62.
[68] Rec. Doc. No. 16-3 at 22-24.
[69] Rec. Doc. No. 16-2 at 20.
[70] *Id.* at 21-22.
49324

mop or broom to clean the floors, and to place a "Wet Floor" sign on the ground in the event of a spill.[71] Achord testified that he surveyed the store every morning when he arrived at work.[72] Thus, Plaintiff maintains that, whether Defendant complied with its own safety policies and procedures is a genuinely disputed fact in this case.

Further, Plaintiff disputes the claimed time of two to three minutes between the notice of the dog pellets and her fall. Plaintiff points out that Achord's testimony regarding the timing of the male customer's purchase of the dog food conflicts his own testimony and the testimony of Plaintiff and Jackson.[73] Plaintiff testified that there was no other patron at the counter when she approached,[74] and Plaintiff did not testify that any other patron assisted her after the fall. Additionally, both Plaintiff and Jackson testified about seeing a second bag of leaking dog food at the "end cap" of an aisle in the store. Plaintiff contends the evidence of a second bag of leaking dog food in the store at the time of Plaintiff's fall calls into question the issue of constructive notice of the hazardous condition on the part of Dollar General employees prior to Plaintiff's fall. The Court agrees.

In *Mendoza v. Winn-Dixie Montgomery, LLC*,[75] the district court for the Eastern District of Louisiana addressed a similar case wherein a patron sustained injuries after slipping and falling on liquid on the floor of a Winn-Dixie grocery store. The court denied summary judgment to Winn-Dixie after finding that the plaintiff presented evidence that the defendant "did not act in conformity with its own policies and procedures in responding

---

[71] *Id.* at 25-26.
[72] *Id.* at 26.
[73] *Id.* at 48; 53; 63-64.
[74] Rec. Doc. No. 16-1 at 18.
[75] No. 16-10761, 2017 WL 2964010 (E.D. La. May 12, 2017).
49324

to, and guarding the spill, prior to the time" of the plaintiff's fall.[76] The court found that "genuine issues of material fact exist as to whether Plaintiff witnessed the spill prior to his fall, … and whether the Defendant's employees complied with the Defendant's written policy."[77] Thus, the court concluded that "[t]hese factual disputes are relevant to whether the Defendant failed to exercise reasonable care and whether the Plaintiff was contributorily negligent."[78]

As the same is true in the case before the Court, the Court cannot grant summary judgment in favor of the Defendant. The Court finds that there are material issues of fact regarding the open and obvious nature of the hazardous condition, whether Plaintiff exercised ordinary, reasonable care in observing the floor as she walked towards the counter, whether Defendant's employees had actual or constructive notice of the hazardous conditions considering the presence of a second bag of leaking dog food, and whether Defendant's employees complied with Defendant's safety policies and procedures in this case. Accordingly, Defendant is not entitled to summary judgment.

---

[76] *Id.* at *2.
[77] *Id.*
[78] *Id.*

49324

### III. CONCLUSION

For the foregoing reasons, the *Motion for Summary Judgment*[79] filed by Defendant is DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana the 18th day of December, 2018.

*Shelly D. Dick*
_____
**SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[79] Rec. Doc. No. 11.

49324